UNITED STATES DISTRICT COURT                              <u>For Online Publication Only</u>
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
THOMAS J. CHISHOLM, II,

                Plaintiff,

      -against-                                              **MEMORANDUM & ORDER**
                              22-CV-2705 (JMA) (SIL)

PATRICK STRYKER, *et al.*,

**FILED
CLERK**

9:29 am, Aug 24, 2022

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

                Defendants.
-----------------------------------------------------------------X
**AZRACK, United States District Judge:**

       Before the Court is the renewed <u>in forma pauperis</u> application filed by Thomas J. Chisholm,

II ("Plaintiff") pursuant to the Court's July 12, 2022 Order.   (ECF Nos. 9-10.)   Upon review,

the Court finds that Plaintiff's reported financial position qualifies him to proceed with this action

without prepayment of the filing fee.   Accordingly, the Court grants Plaintiff's renewed <u>in forma

pauperis</u> application.   However, for the reasons that follow, the Court finds that Plaintiff has not

set forth a plausible claim for relief.   Accordingly, the amended complaint is dismissed without

prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

**I.**       **Background**

      **A. Relevant Procedural History**

       Plaintiff's amended complaint names Patrick Stryker, as CEO of A.B.C. Employment

Agency ("Stryker"), the A.B.C. Employment Agency ("the Agency"), and Woodcrest Estates

("Woodcrest" and collectively, "Defendants") as Defendants and is submitted on the Court's

complaint form for employment discrimination claims with an additional nine-typed pages and

includes a copy of the Determination and Notice of Rights from the U.S. Equal Employment

Opportunity Commission ("EEOC").   (ECF No. 7.)   Plaintiff checked the box on the form to

allege that his claims are brought pursuant to Title VII of the Civil Rights Act of 1964, as codified,

42 U.S.C. §§ 2000e to 2000e-17 ("Title VII") as well as other unspecified federal, state, and city or county laws.   (Id. at ¶ II.)   Plaintiff also checked the boxes on the form to allege that, during the period from September 27, 2020 to September 29, 2020, his employment was terminated, he suffered unequal terms and conditions of his employment, and that the Defendants retaliated against him on account of his race and color, which Plaintiff alleges is African-American.   (Id. ¶¶ III.)   According to the amended complaint, Plaintiff filed a charge with the EEOC on or about December 21, 2020 and he received a Notice of Right to Sue on February 14, 2022.   (Id. ¶ IV and at 17-18.)

**B.  The Amended Complaint[1]**

This action arises from the termination of Plaintiff's temporary job placement as a Maintenance Mechanic at Woodcrest.   (Id. at 8 and in toto.)   According to the amended complaint, Stryker, as "C.E.O./President" of the Agency, phoned Plaintiff on September 3, 2020 and offered him the position and explained that the temporary position could become permanent if Plaintiff "worked hard, arrived on time and was capable of the assignments."   (Id. at 8, 13.) Plaintiff alleges that he "performed a stellar job every day", was "early every single day and approach[ed] each assignment with pride and respect for my co-workers and important residents who lived [at Woodcrest].   (Id. at 9, 14.)   Plaintiff alleges that in the short time he was employed, he had "befriended" a few unidentified residents who Plaintiff claims expressed "surprise[] that a Black man was even hired at Woodcrest and to be very careful because they believed Woodcrest staff was partial to such or it seems so."   (Id.)

---

[1]  The following facts are taken from the amended complaint and are presumed to be true for the purposes of this Memorandum and Order.

2

Approximately three weeks into Plaintiff placement at Woodcrest, on or about September 27, 2020, Plaintiff was assigned to accompany the on-site superintendent "Raul" to change out a refrigerator from an apartment unit.   (Id.)   When Plaintiff and Raul arrived with the new refrigerator at the door of the apartment, there was a "Red Dot" which Plaintiff alleges was a signal for "no entry" while the occupant was not at home.   (Id.)   After no one answered the doorbell, Plaintiff claims he suggested to Raul that they not enter and return when the resident was at home. According to the amended complaint, Raul insisted that they enter and complete the task since Raul had the key.   (Id.)   Once inside, Plaintiff describes that Raul removed the contents from the old refrigerator and placed them in the sink and on the counters causing other items such as pictures, calendars, and other papers to be "strewn about."   (Id.)   The old refrigerator was dismantled and removed and the new one was installed at which time Plaintiff and Raul left.   (Id.)

Shortly thereafter, the resident of that unit "flagged" Plaintiff and Raul down, yelled and cursed at them, and questioned why they had entered her apartment without permission.   (Id. at 10.)   She further complained that the doors of the new refrigerator were installed incorrectly and that a "crystal figurine that her deceased husband collected and left to her [was] suddenly missing." (Id.)   The resident then contacted the property manager, Mary Schultz, who instructed Plaintiff and Raul to come to the office where she allegedly expressed her belief that they did not take the figurine.   (Id.)   The next day, while Plaintiff and Raul were together in a truck, Mary called Raul and Plaintiff allegedly overheard her tell Raul to come to the office but to leave Plaintiff "behind in the shop."   (Id.)   While Raul and Mary were meeting, Plaintiff alleges he took "a 2 hour lunch" break.   (Id. at 10-11.)

Later that day, at approximately 6 or 7 p.m., Stryker called Plaintiff and informed him that

he would no longer be working at Woodcrest.   (Id. at 11.)   When Plaintiff questioned Stryker, the amended complaint alleges that Stryker told Plaintiff that "it has something to do with a figurine."   (Id.)   When Plaintiff protested, Stryker alleged told Plaintiff it is also because "you have no driver's license."   (Id.)   When Plaintiff objected and reminded Stryker that Plaintiff had emailed a copy of his driver's license and Social Security card prior to commencing his employment, Plaintiff alleges that Stryker "became more upset."   (Id.)   Plaintiff alleges that he then told Stryker that his rights were being violated and that he believes his termination is "because of [his] African American status."   (Id. at 12.)

For relief, Plaintiff seeks the termination of employment of Shultz and Raul "if [they are] still employed" as well as $5 million from each Defendant and additional punitive damages and any other relief "deemed just and proper by this honorable institution."   (Id. ¶ V at 6.)

## II.   Discussion

### A.   *In Forma Pauperis* **Application**

Upon review of Plaintiff's declaration in support of his renewed application to proceed *in forma pauperis*, the Court finds that Plaintiff is qualified to commence this action without prepayment of the filing fee.   28 U.S.C. § 1915(a)(1).   Therefore, Plaintiff's renewed application to proceed *in forma pauperis* is granted.

### B.  Standard of Review

The in forma pauperis statute requires that a court dismiss an action if it determines that it "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief."   28 U.S.C. § 1915(e)(2)(B).   The Court must dismiss the action as soon as it makes such a determination.

Pro se submissions are afforded wide interpretational latitude and should be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997). In addition, the court is required to read a plaintiff's pro se amended complaint liberally and interpret it as raising the strongest arguments it suggests. United States v. Akinrosotu, 637 F.3d 165, 167 (2d Cir. 2011) (per curiam) (citation omitted).

The Supreme Court has held that pro se complaints need not even plead specific facts; rather the complainant "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks and citations omitted); cf. Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, a pro se plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. While "'detailed factual allegations'" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. at 678 (quoting Twombly, 550 U.S. at 555).

### C. Title VII

Title VII makes it an unlawful for an employer to refuse to hire, discharge, or otherwise discriminate against any individual with respect to employment because of such individual's race,

color, religion, sex, or national origin.   See 42 U.S.C. § 2000e-2(a)(1).   In order to state a claim for employment discrimination under Title VII, a plaintiff must allege (1) that he is a member of a protected class, (2) that he was qualified for the position at issue, (3) that he suffered an adverse employment action, and (4) that the circumstances give rise to an inference of discriminatory motivation.   Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004); see Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 78 (2d Cir. 2015) ("[I]n a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, or national origin was a motivating factor in the employment decision."). While plaintiff is not required to demonstrate a prima facie case of discrimination at the pleading stage, he must allege facts that "give plausible support to a *minimal* inference of discriminatory motivation."   Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis in original).

The "sine qua non of a . . . discriminatory action claim under Title VII is that the discrimination must be *because of*" the employee's protected characteristic.   Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007) (per curiam) (emphasis in original).   Accordingly, a claim for discrimination under Title VII is properly dismissed where the plaintiff fails "to plead any facts that would create an inference that any adverse action taken by any defendant was based upon" the protected characteristic.   Id.   Here, as is readily apparent, Plaintiff has not alleged any facts from which the Court could reasonably construe circumstances surrounding the termination of Plaintiff's employment that give rise to an inference of discrimination.   Indeed, Plaintiff acknowledges that his employment was "temporary" and alleges no facts suggesting that any of the Defendants' actions were motivated at all by Plaintiff's race.   (ECF No. 7 at 8, 13 and in toto.)

6

Courts in this Circuit have routinely dismissed discrimination claims where the plaintiff's allegations, like here, fail to suggest discriminatory intent.   See, e.g., Pantane, 508 F.3d at 112 & 112 n. 3 (finding that the district court correctly noted that "[p]laintiff failed to allege even the basic elements of a discriminatory action claim."); Lucas v. Apple Food Serv. of New York, LLC, No. 15-CV-4007(SJF)(AKT), 2015 WL 6507495, at *3 (E.D.N.Y. Oct. 27, 2015) (finding "the complaint fails to plead any facts linking defendant's conduct, i.e., the suspension of plaintiff without pay for two (2) weeks and termination of her employment, to plaintiff's race, color, gender, religion or pregnancy, or supporting a reasonable inference that defendant discriminated against plaintiff because of those protected characteristics.") (citing Hedges v. Town of Madison, 456 F. App'x 22, 24 (2d Cir. Jan.13, 2012) (summary order) (affirming dismissal, inter alia, of the plaintiff's ADA claim on the basis that he "ha[d] not adequately pleaded discrimination on the basis of disability" because he "alleg[ed] not a single fact in support of his claims of discriminatory treatment which might conceivably give notice of the basis of his claims to the defendants"); Berkery v. Archdiocese of Hartford, 352 F. App'x 487, 490 (2d Cir. 2009) (summary order) (affirming dismissal of the plaintiff's ADA claim because the complaint presented no allegations linking the defendant's employment decision to the plaintiff's disability or supporting an inference of disability discrimination); Samuel v. Bellevue Hosp. Ctr., 366 F. App'x 206, 207 (2d Cir. Feb.17, 2010) (summary order) (affirming dismissal of the plaintiff's employment discrimination claim on the basis that he "failed to allege sufficient facts to render plausible his conclusory assertion that the defendants discriminated against him on the basis of his membership in a protected class.")); see also Maldonado v. George Weston Bakeries, 441 F. App'x 808, 808-09 (2d Cir. 2011) (summary order) (affirming dismissal of pro se complaint where plaintiff alleged that

7

other employees involved in similar altercations were given preferential treatment, but did not allege that this preferential treatment was due to race or age); Kouakou v. Fideliscare N.Y., 920 F. Supp. 2d 391 (S.D.N.Y. 2012) (dismissing pro se complaint where comments alleged in complaint did "not create an inference that the denial of [p]laintiff's requested transfer were motivated by his race or national origin, particularly where [p]laintiff [did not allege that employer granted transfer requests of similarly situated employees outside of plaintiff's racial group]"); Palmer v. Safetec of Am., Inc., No. 11-CV-702, 2012 WL 2994060, at *7 (W.D.N.Y. May 31, 2012) (report and recommendation) (dismissing complaint where plaintiff "fail[ed] to allege any facts that could plausibly be construed as establishing [that] Plaintiff's discharge was based on his membership in any of the protected classes [at issue]," and noting that plaintiff failed "to identify or to otherwise specify" employees outside of plaintiff's protected classes who received preferential treatment or engaged in similar misconduct), adopted by 2012 WL 2994057 (W.D.N.Y. July 20, 2012).

Given that absence of any facts suggesting that the termination of Plaintiff's temporary employment was motivated, even in part, by discriminatory animus, he has not alleged a plausible claim for relief.    Nor has Plaintiff alleged that others were treated more favorably, including Raul, whose employment status is apparently unknown to Plaintiff.    (See ECF No. 7 at ¶ V.) Accordingly, the amended complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).[2]

---

[2] In addition, it is long established that individuals are not subject to liability under Title VII. See Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004); Jones-Khan v. Westbury Bd. of Educ., No. 21-CV-3908(JMA)(JMW), 2022 WL 280646, at *7 (E.D.N.Y. Jan. 31, 2022) (dismissing Title VII claims against individual defendants because there is no individual liability under Title VII); Gioia v. Singh, No. 20-CV-4014(JMA)(SIL), 2021 WL 602701, at *2 (E.D.N.Y. Feb. 16, 2021) ("'Title VII does not impose liability on individuals.'") (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995)) (add'l citation omitted)).    Accordingly, Plaintiff's Title VII claim against Stryker is not plausible and is dismissed for this additional reason.

### D.  State Law Claims

Although Plaintiff does not include any other laws apart from Title VII in the amended complaint, he did, however, check the boxes on the form to allege that his claims are also brought pursuant to unspecified other federal, state, and local laws.   (ECF No. 7 at 4.)   The Court presumes that Plaintiff intends to assert discrimination claims under the New York State Human Rights Law, N.Y. Executive Law § 296 ("NYSHRL").   Discrimination claims under the NYSHRL are analyzed under the same framework and pleading standard as Title VII claims. See, e.g., Ruiz v. County of Rockland, 609 F.3d 486, 491 (2d Cir. 2010); Weinstock v. Columbia Univ., 224 F.3d 33, 42 n. 1 (2d Cir. 2000) ("The identical standards apply to employment discrimination claims brought under Title VII [and] . . . New York Executive Law § 296 [NYSHRL] . . . ").   Accordingly, for the reasons set forth above, Plaintiff has not alleged a plausible claim under the NYSHRL either and any such claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

With regard to any other remaining state law claims, under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."   However, courts "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction."   Id. § 1367(c); (c)(3); see Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d. Cir. 2011).   The Supreme Court explained: "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity --

9

will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

Here, given the absence of a viably pled federal law claim, the interests of judicial economy, convenience, fairness, and comity weigh in favor of not exercising supplemental jurisdiction at this time over any other state law claims that may be reasonably construed from the amended complaint.   Accordingly, the Court declines to exercise supplemental jurisdiction over any other potential state-law claims contained in Plaintiff's amended complaint, apart from the NYSHRL claim which the Court has already dismissed, and thus dismisses any such claims without prejudice.

### E.  Leave to Amend

A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)).   Here, the Court has carefully considered whether Plaintiff should be granted leave to amend his complaint.   In an abundance of caution, Plaintiff is granted leave to file a second amended complaint in accordance with this Memorandum and Order.   Plaintiff shall: (1) clearly label his submission "Second Amended Complaint"; (2) include the same docket number as this Order, 22-CV-2705(JMA)(SIL); and (3) file it within thirty (30) days from the date of this Order.   Plaintiff is cautioned that the second amended complaint will completely replace the present amended complaint and, therefore, he must include all claims against any Defendants he seeks to pursue in the second amended complaint and shall include factual allegations concerning the challenged conduct pertaining to

10

each Defendant.    If Plaintiff does not file a second amended complaint within the time allowed, judgment shall enter and this case will be closed.

Plaintiff is encouraged to consult with the Hofstra Law Pro Se Clinic located in the Central Islip Courthouse, which can provide free information, advice, and limited scope legal assistance to non-incarcerated pro se litigants.    The Court notes that the Pro Se Clinic is not part of, nor affiliated with, the United States District Court.    The Clinic offers services such as: providing brief legal counseling; advising you about potential federal claims prior to filing suit; explaining federal court rules and procedures; and reviewing and editing draft pleadings. Consultations with the Pro Se Clinic can be conducted remotely via telephone. If you wish to contact the Pro Se Clinic to make an appointment, email them at PSLAP@Hofstra.edu or leave a message at (631) 297-2575.

**III. Conclusion**

For the forgoing reasons, the Plaintiff's renewed application to proceed in forma pauperis is granted.    However, Plaintiff's amended complaint is dismissed sua sponte in its entirety without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii) for failure to state a claim for relief. Plaintiff is granted leave to file a second amended complaint in accordance with this Memorandum and Order. If Plaintiff elects to further amend his complaint, he shall clearly label his submission "Second Amended Complaint," include the same docket number as this Order, 22-CV-2705(JMA)(SIL), shall file it within thirty (30) days from the date of this Order.    Plaintiff is cautioned that the second amended complaint will completely replaces the prior complaints. Therefore, Plaintiff must include all claims against any Defendants he seeks to pursue in the second amended complaint.    If Plaintiff does not file an amended complaint within the time allowed,

judgment shall enter and this case will be closed.

The Court declines to exercise supplemental jurisdiction over any remaining state law claims alleged in the complaint and therefore the state law claims are dismissed without prejudice. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal.   See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

Dated:  August 24, 2022
Central Islip, New York

_____/s/ (JMA)_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE